Good morning your honors, Sandra Lopez of the Federal Defenders. On behalf of Mr. Vasquez-Perez, I will be trying to reserve two minutes of my time for rebuttal and I will be watching the clock. In Rincon, this court defined the phrase extrinsic evidence as evidence that was not presented to the jury during trial prior to deliberations. In this case, after the commencement of deliberations, the district court ordered Mr. Vasquez to stand in front of the jury, unbutton his shirt, and pull down his collar, exposing a never before seen tattoo on his neck. A tattoo that was not visible at any point to the jury during trial or prior to deliberations. This extrinsic evidence was prejudicial to Mr. Vasquez because the tattoo tied the man in the courtroom to the man in the documents that the government used to prove several other elements. Can you clarify for me, were you the trial counsel in this case? I wasn't. I was going to ask you to clarify for me what the jury really could see because we have the evidence in terms of how he was dressed and seated, but it would be helpful to, I guess, confirm what I understand to be the record, which is that during the entirety of trial, his shirt collar was buttoned up and that tattoo was not visible? That's correct, and that's excerpt of record 14 through 15 where the defense counsel says explicitly that at no point, in fact, she had not seen a tattoo on his neck because his collar was buttoned up and he had the mask, which was taken down for identification at one point, and the judge agreed with that. The judge said, that's right, his neck was not visible to the jury because his shirt was buttoned up and his collar was not pulled down at any point during trial. So the jury's note asking to see the neck tattoo really came from the photograph. That's how they were able to discern that neck tattoo? That's correct, Your Honor. That appeared to be obvious from everyone because exhibit 18A, the second page, has a picture of a man with a tattoo on his neck. And so the jury wanted to see the tattoo on the neck to make the connection between Mr. Vasquez, who was in the courtroom, with the man that was in that exhibit. And so this was extrinsic evidence. In Rincon, the trial had ended and deliberations began and the jurors were asking for specific evidence. And this court was answering the question as to what is extrinsic evidence and whether their request fell under that. And they did that by asking the question whether the evidence at issue was presented at any point during trial prior to deliberations. And it compared two different requests made by the jury. In the first request, they requested to see the defendant's face compared to a surveillance photo that was admitted into evidence. And in the second request, they asked to see the First request was not extrinsic evidence. And that's because Rincon's face was visible to the jury during the entire trial. In fact, he displayed his face and the surveillance photo was also admitted into evidence. So there was nothing extrinsic to the trial. But the second request, the sunglasses, were not admitted into evidence. So this court confirmed with the district court that that is extrinsic evidence because it was extrinsic to the evidence presented at trial. The First Circuit in Santana similarly held that when evidence is not presented to the jury during trial, it is extrinsic. In that case, the jury wanted to see the defendant's ears that were covered throughout the entire trial with headphones. The First Circuit found that the court erred and it was extrinsic evidence. And this makes sense because that's how trials work. And in fact, the district judge in this case agreed with that. When he gave jury instructions to the jury before deliberations, it said at some point during your deliberations, you might have questions and you want more evidence. The court said, and that is an excerpt of record. Let me see. 242. No can do. The arrow has left the bow at this point. Though we can't give you additional evidence. And the court explained why. The reason why is because the parties choose what evidence and arguments it introduces at trial. But once deliberations begin, the evidence is closed. And any additional evidence is extrinsic to the trial. Why shouldn't we treat this as a reopening of the evidence? Your Honor, even if it is, we strongly disagree that it is a reopening because of Rincon, Santana, and the jury, the district judge's own instructions. But even if the district court in this case abused its discretion under Hernandez-Mezza. Hernandez-Mezza sets out two prongs. The first prong is that the judge has to show extreme reluctance in allowing the government to open the case. In this case, the lack of reluctance is even more egregious than in Hernandez-Mezza because the government didn't even ask for a reopening of the case. That's an interesting point. Do you think that you would have had the same argument if the district judge had done what the government actually asked for? Your Honor, I think it would have been different if Mr. Vasquez's face was shown during trial. And so that may have been a different situation. Before you run out of time, counsel, can you address the question of prejudice? Because the government had fingerprint evidence in this case, which is usually pretty compelling evidence of identity. Sure. So there is a presumption of prejudice. And Navarro-Garcia says that Mr. Vasquez is entitled to a new trial if there exists a reasonable possibility that the extrinsic material could have affected the verdict. Such possibility exists if it affected the reasoning of even one juror. Here, there is more than a reasonable possibility. The jury wanted to make a connection between Mr. Vasquez and the man in the documents. The central issue in this case was identity. And as the government concedes in its brief at page 41, the defense indeed attempted to question Mr. Vasquez's connection to the AFAL in various ways. And the defense did this by poking holes in the government's case, by attacking the reliability of the fingerprint expert in her connection between the fingerprint taken at the station and the fingerprints in the file. It poked holes when it asked about the accuracy of the fingerprint card. And it poked holes when it said, when there was a defense, that the man in the field and identified in court was not the same man that was fingerprinted because they were wearing different clothes. All of that shows more than a reasonable possibility that it affected the trial and the verdict. And because the jury asked about this, the question that the jury had doubts, the government will not be able to meet its burden of establishing that there was not prejudice in this case. I know you wanted to save some time. Good morning, Your Honors. May it please the Court, Amy Wong on behalf of the United States. In this case, the District Court did not abuse its discretion when it decided to reopen the case, and it did not have a direct response to a jury question to view Mr. Vazquez and specifically his neck tattoo. Mr. Vazquez was brought out and presented to the jury in open court, on the record, in the presence of counsel, and under judicial oversight. Why do those facts matter? If the District Court allowed the jury to see evidence that they were not privy to during the presentation of the case, then why does it matter that he had counsel there? Counsel did object and preserved the objection for the record, so I'm not sure what these other safeguard arguments have to do with the question of whether extrinsic evidence was improperly admitted. The safeguards that were presented in this case do matter to distinguish this case as a reopening of the evidence from another, other cases where it was extrinsic evidence. In the case law that discourages extrinsic evidence, this Court has held that those cases involved jury misconduct, out-of-court experiments, out-of-court research, and the judge had no control over the jury's knowledge and the potential for bias, prejudice, or confusion. That argument would make a lot of sense pre-Rincon, but once Rincon is established, I'm not quite sure how you get there, because it seems like that case necessarily changes the definition of extrinsic evidence to not just be things that are presented out of the courtroom. Thank you, Your Honor. In this case, it is a reopening, because in the courtroom, defense counsel had a chance to raise her objections, to make her record, to ask for a reopening of her side of the case as well, or Mr. Vazquez's side of the case, and confront the witnesses, cross-examine, or offer rebuttal evidence or argument as to the neck tattoo. But in this case, defense counsel did decline to request any of those rights to be exercised during the reopening, and perhaps it's because the neck tattoo was not vulnerable to reasonable dispute. There's the party presentation principle. This was a sui sponde reopening of the case, because the trial court went beyond what the prosecutor asked for and wanted, so why isn't that an abuse of discretion? It's not an abuse of discretion, because the judge had a duty to answer the jury's question, and it was a straightforward question. It was a question that was precipitated by defense counsel's closing that encouraged the jury to scrutinize Mr. Vazquez's physical appearance. I don't know that that makes sense, because yes, I agree with you, the court has an obligation to respond to the jury's questions, but often courts respond to them by no, right, because they're asking for something that is beyond what's appropriate for them to know. Or, you know, lots of different reasons why the answer back to the jury is you don't get the thing that you're asking for, so I'm not sure how that works with the argument you're making. And in this case, it was the question came after the defense counsel's closing argument that said, look at this man. This man doesn't look like the man depicted in Exhibit 18A. Right, but identity was the central issue from the very beginning. From opening statement, identity was an issue. So if the jury, after short deliberation, said, can we take a look at the tattoo? One response is, you're limited to consider the evidence that was presented during the course of trial. Send the jury back to continue deliberating, right? The court didn't have to answer it by reopening the case sua sponte, so I'm not sure where you're going with that. Our position is that the judge did not abuse his discretion when he did decide to reopen the case. The jury's question was in two parts. Can we see his face, specifically his neck tattoo? And his face was admitted in evidence during an in-court identification by one of the government's witnesses. So as to Rincon, that portion of the presentation of Mr. Vasquez was appropriate, and that the additional evidence of his neck tattoo was reopening of the evidence to further answer the jurors' questions. I guess, so my understanding of the law is that a jury might be able to re-look at something they've already seen, but that a jury is not allowed to look at something new after the close of the evidence. That seems like a very clear and workable rule to me, and the government's case, the government's argument in this appeal is to somehow change that. And I guess I need you to convince me why we shouldn't, why we should alter this sort of easy to apply, clear rule. In your honor, to answer the fact that if we accept that the neck tattoo was new evidence and extrinsic evidence, then we would pivot to that this was a harmless error in light of the cumulative and overwhelming evidence of Mr. Vasquez's identity. The government presented a plethora of witness testimony and exhibits to conclusively and uncontrovertedly establish Mr. Vasquez's identity. They began with the arresting agent's in-court identification. They brought in the processing agent who verified his fingerprints and ran the records checks and compared the picture of Mr. Vasquez to the Mr. Vasquez in front of him at the time of processing. The government brought in a deportation officer who testified as to his standard practice in verifying removals and that they are removing the correct person. They brought in an A-file custodian who connected this Mr. Vasquez with the Mr. Vasquez in the A-file under a single A-number with all the deportation documents and the corresponding fingerprint evidence of those deports. And then finally, they brought in a fingerprint expert who examined six fingerprints and conclusively, with absolute certainty, I think was the quote, opined that this Mr. Vasquez and those fingerprints belong to the same person, Mr. Vasquez. And so, based on the overwhelming evidence, this new evidence, even if it was extrinsic? Well, it wasn't so overwhelming because the jury, after just less than a half an hour of deliberation, asked to see the neck tattoo. I thought the defense did a pretty good job cross-examining the fingerprint expert, so the jury must have had some doubts as to identity. When you look at the photos, he does look, at least to my eyes, remarkably different in just a 10-month time span, had seemingly lost quite a bit of weight. And Your Honor, I think the government did address the time span in its rebuttal argument that an original deport document was prepared in 2012, and so the photo may have been taken over a decade ago. So, going back to your point as to the cross-examination of the fingerprint expert, defense's approach to the fingerprint expert was essentially questioning whether a second fingerprint examiner had examined and reviewed the expert's work. And ultimately, the expert explained, no, they didn't need to. We had a latent print, a known exemplar of Mr. Vasquez's fingerprint, compared them to the five other fingerprints in the A-file, and concluded that there's no possibility these fingerprints belong to anyone else. Was this a true reopening? The reason I ask is, normally if you have a reopening of the evidence, the court affords both sides the opportunity to examine or present and perhaps even argue. Here, the court just said, show the tattoo, and it was excused. Now, I gather from your argument, you're saying implicitly they could have done a lot more, but I don't see in the record, and you can correct me if I'm wrong, where the court actually afforded both sides the opportunity to present other evidence or to make other arguments. Am I wrong on that? Your Honor, I would, and I don't have the capacity as some of my colleagues do, to pin site page numbers, but there are two portions of the record where the court did offer the opportunity to supplement their objections or make the record or ask for additional rebuttal evidence or argument. I'll take a look. I'll take your word for it. At the beginning of the conference, the court did specifically ask defense counsel, do you have anything to add on behalf of Mr. Vasquez? Right, but I took that in context to just mean the objection, but I'll review it. It's our position that that was also an invitation and an opportunity for Mr. Vasquez to make his record and ask to reexamine witnesses or offer rebuttal evidence or argue as to the neck tattoo. However, the neck tattoo is what it is, and perhaps it was not subject to reasonable dispute, so that is why the defense counsel declined at the time. And so if the court has no further questions, I see I'm running low on time, we would ask that the court affirm. Thank you. Thank you, counsel. Thank you. As your honor stated, the easy rule to apply is recon. When the district judge got the question, the response should have been no. As it said previously, prior to deliberations, we can't give you additional information. That's what the judge said, and that's what the judge should have said again. This was not a reopening. Counsel cites two portions of the transcript. In the first, the district judge clearly posed the question, can I do this? Can I make Mr. Vasquez expose his neck? The defense said no. The government didn't want it, and it did it anyway. At no point was this a reopening of the case, and despite the evidence that the government presented at trial, despite the arguments in rebuttal, the jury still had doubts. And we know this because the jury asked questions that went directly to the central issue in this case. Was Mr. Vasquez, the man in the courtroom, the same man in the A-file, the documents that proved several of the elements of the offense and special allegations that increased the statutory maximum? Unless the court has any questions, I'll submit. Thank you very much, counsel, for both sides for your argument today. The matter is submitted.
judges: THOMAS, NGUYEN, FORREST